UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN THOMPSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-0761-SPM |
| | ) | |
| TOM VILLMER, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Kevin Thompson's ("Petitioner") *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent filed a response to the Petition (Doc. 6), to which Petitioner filed a traverse (Doc. 8). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 16). For the following reasons, the petition for a writ of habeas corpus will be denied.

I. FACTUAL AND PROCEDURAL BACKGROUND

On March 9, 2011, Petitioner was indicted on three counts of statutory sodomy in the second degree. *See* Resp't Ex. A, at 14-15. On April 11, 2012, a superseding indictment charged defendant with eleven counts of statutory sodomy in the second degree. *See id.* at 22-26. On August 22, 2012, a jury found Petitioner guilty of eleven counts of statutory sodomy in the second degree. *See* Resp't Ex. A., at 79-89. On November 8, 2012, judgment was entered on all eleven counts, and Petitioner was sentenced. *See id.* at 90-97.

The Missouri Court of Appeals summarized the background and facts as follows:

> On March 9, 2011, [Petitioner] was indicted on eleven counts of second-degree statutory sodomy in violation of Section 566.064. The charges stemmed from [Petitioner]'s mouth-to-genital contact with the victim E.J. on seven separate occasions, and hand-to-genital

1

> contact with the victim E.J. on four separate occasions, all when E.J. was less than seventeen years of age, between May 1, 2009, and June 1, 2010. Detective Timothy Herr ("Detective Herr") of the Hazelwood Police Department investigated the sexual allegations involving [Petitioner] and E.J. and interviewed both parties. The Children's Advocacy Center ("CAC") also interviewed E.J. This interview was recorded and portions were played at trial. Detective Herr was present at the CAC interview and took notes.

(Resp't Ex. J at 2).

In April 2013, the Missouri Court of Appeals, on direct appeal, affirmed Petitioner's conviction. Resp't Ex. E at 1. Petitioner subsequently filed a *pro se* Rule 29.15 Motion for post-conviction relief, asserting ineffective assistance of his trial counsel, alleging that she: (i) failed to adequately cross examine Detective Herr about his police report and recollections concerning E.J.'s CAC statement; (ii) failed to object to the prosecutor's use of leading questions throughout the direct examination of E.J.; and (iii) failed to investigate and depose E.J. prior to trial. Resp't Ex. G at 6. In his amended motion for post-conviction relief, filed through counsel, Petitioner raised identical claims of ineffective assistance of counsel. *Id*. at 30. The motion court denied the claims on the merits without an evidentiary hearing. *Id*. at 60. On appeal, Petitioner raised the same three claims. Resp't Ex. H at 14-16. The Missouri Court of Appeals affirmed the motion court's denial of his motion for post-conviction relief. Resp't Ex. J at 3.

On May 27, 2016, Petitioner filed the instant petition for a writ of habeas corpus, alleging six grounds for relief: (1) that his trial counsel was ineffective for failing to investigate and depose the victim before trial; (2) that his trial counsel was ineffective for failing to object to the prosecutor's use of leading questions during the direct examination of the victim; (3) that his trial counsel was ineffective for failing to cross-examine Detective Herr with his police report; (4) that Petitioner's convictions violated the double jeopardy clause; (5) that the trial court erred by failing to declare a mistrial during the state's closing argument based on improper personalization; and

(6) that the trial court erred by failing to declare a mistrial during the state's closing argument after the prosecutor characterized Petitioner as a pedophile without any evidentiary basis. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard for Reviewing Habeas Corpus Claims on the Merits

A federal judge may issue a writ of habeas corpus freeing a state prisoner, if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a). However, the judge may not issue the writ if an adequate and independent state-law ground justified the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-88 (1977).

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by the AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under the AEDPA, a federal court may not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the States court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529, 412-13 (2000). "[A] state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

### B. Procedural Default

To preserve a claim for federal habeas review, a state prisoner must present that claim to the state court and allow that court the opportunity to address the claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992) and *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (en banc)). The procedural default doctrine and its attendant cause and prejudice standard are grounded in concerns of comity and federalism, and apply alike whether the default

4

in question occurred at trial, on appeal, or on state collateral attack. *See Coleman*, 501 U.S. at 730; *Murray v. Carrier*, 477 U.S. 478, 490-92 (1986).

To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Id.* at 488. To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must " 'present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted.' " *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

**III.    DISCUSSION**

**A. Claims Addressed in State Court: Grounds One, Two, and Three**

The following claims were addressed on the merits in a state court proceeding. As such, the AEDPA requires this court to exercise only limited deferential review of the underlying state court decision. 28 U.S.C. § 2254. This Court will grant relief only if the state's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

a. <u>Grounds One, Two, and Three: Ineffectiveness of Petitioner's Trial Counsel</u>

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, a petitioner must show both that "[his] counsel's performance was deficient" and that "the

deficient performance prejudiced [his] defense." *Strickland*, 466 U.S. at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 201 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance," *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

i. Trial Counsel's Failure to Depose the Victim

In Ground One, Petitioner alleges that his trial counsel was ineffective for failing to investigate and depose the victim as a material witness prior to trial. Petitioner asserts that his attorney should have deposed E.J. as a material witness before trial so that his testimony would

6

have been preserved and would have allowed for more effective impeachment of inconsistent statements. Petitioner raised this claim on appeal from the denial of post-conviction relief, and the Missouri Court of Appeals denied it on the merits, stating:

> Although [Petitioner] complains trial counsel was ineffective in not conducting her own deposition of E.J., [Petitioner] does not allege what information trial counsel could have developed from a deposition that was not obtained in E.J.'s earlier interview at CAC. [Petitioner] therefore failed to show trial counsel's preparedness for trial was affected by not conducting said deposition. Specifically, [Petitioner] fails to identify what trial counsel would have discovered, that was not otherwise known to her, had she interviewed and deposed E.J. In fact, the motion court noted trial counsel's decision not to interview E.J. prior to trial may have been strategic in that such an interview, if conducted, would give E.J. more practice in answering questions in preparedness for his trial testimony as well as a familiarity with trial counsel, her style of questioning, and the questions she would ask him at trial. Additionally, choosing not to depose a State's witness, especially when it is known what that witness is going to say, avoids highlighting or alerting the State to weaknesses in the defense or defense strategy.
> 
> [Petitioner] does not explain how any deposition might have changed the outcome. The motion court found [Petitioner] did not show what evidence might have been found by additional formal discovery, including a deposition, or how it would have improved [Petitioner]'s trial position and provided him a viable defense. Thus, because [Petitioner] ultimately failed to show there is a reasonable possibility the outcome of the case would have been different if trial counsel had deposed E.J. prior to trial, he did not show he was entitled to an evidentiary hearing on this claim. Point III is denied.

(Resp't Ex. J, at 11) (citations omitted).

A review of the record shows that the Missouri Court of Appeals did not apply *Strickland* to the facts of this case in an objectively unreasonable manner. The Missouri Court of Appeals properly noted that the *Strickland* standard applied. Resp't Ex. J, at 4. The Court agrees with the state court's determination that trial counsel's decision not to interview E.J. prior to trial may have been strategic in that such an interview, if conducted, could have given the victim practice in answering questions about the events at issue, and could have served to better prepare him for facing such questions at trial. Furthermore, the Missouri Court of Appeals reasonably found that

Petitioner failed to identify anything trial counsel could have discovered about E.J.'s testimony that was not already available to her by reviewing E.J.'s CAC interview, and therefore, her failure to depose E.J. did not negatively impact counsel's performance. As the Eighth Circuit has held, a "defense counsel's failure to depose [a witness] was not ineffective, where there was no reason to suppose that doing so would have helped defendant's case." *Robinson v. Maschner*, 2 Fed. Appx. 683, 684 (8th Cir. 2001) (citations omitted). Because the Missouri Court reasonably applied *Strickland* in evaluating this claim, its determination was not "contrary to, [nor did it involve] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d). The Court will deny relief on Ground One.

ii. Trial Counsel's Failure to Object to Leading Questions

Petitioner's second ground for relief alleges that Petitioner's trial counsel was ineffective for failing to object to the prosecutor's use of leading questions throughout the direct examination of the victim. Specifically, Petitioner asserts that the timing of the sex acts was a crucial part of the State's case against him, and the prosecutor repeatedly used leading questions during his direct examination of E.J. in order to indicate that oral sex happened multiple times before E.J. was seventeen, and that if Petitioner's counsel had objected to such leading questions, the trial outcome would have been different. Petitioner raised this claim in his Rule 29.15 post-conviction motion and on appeal from the denial of that motion. The Missouri Court of Appeals considered the claim and rejected it on the merits, stating:

> [Petitioner] asserts trial counsel was ineffective in failing to object to the prosecutor's purported leading questions of E.J. [Petitioner] complains of the prosecutor's questioning of E.J. as to the timing of the sexual acts committed by [Petitioner], the number of times the acts occurred, and the details E.J. gave his caseworker. The motion court found these questions were largely follow-up questions to questions already asked of E.J. by the prosecutor, for purposes of clarification and elucidation. Questions presented in a leading form on matters already covered are not objectionable.

8

Further, decisions about whether or when to make objections at trial are left to the judgment of counsel. Ineffective assistance of counsel is not to be determined by a post-trial academic determination that counsel could have successfully objected to evidence in a given number of instances. Failing to object to objectionable evidence does not establish ineffective assistance of counsel unless the evidence resulted in a substantial deprivation of the accused's right to a fair trial.

Finally, the motion court noted E.J. was a young witness discussing an embarrassing set of facts and the motion court, which also sat as the trial court, stated it would have given some latitude to the prosecutor's questioning and thus trial counsel was not ineffective for failing to make objections that would have been overruled. Trial courts have great latitude in allowing and forbidding leading questions.

*Timing, Number, and Details of Acts*

E.J. testified he moved in with [Petitioner] on May 14, 2010. E.J. testified he turned seventeen on June 9, 2010. One of the important issues at trial was whether [Petitioner] performed sex acts with E.J. before E.J. turned seventeen. Therefore, the State had to ensure through its questioning of E.J. that it was made clear to the jury when each sexual act described by E.J. occurred, relative to E.J.'s moving in with [Petitioner], his birthday, and his age at the time of the act. This required confirming and clarifying questions directed to E.J., with regard to information already testified to by E.J., to present the information in a chronological context so that the jury could determine, in deliberating and arriving at its verdict, whether or not each sex act occurred before E.J. was seventeen years old.

The questions directed to E.J. by the State as to how many times [Petitioner] did certain things to E.J. and to describe them were not leading. They were mere questions. Defense counsel was free to cross-examine E.J. on his answers and extensively did so. On redirect, the State again asked questions to reestablish and clarify what E.J. had already testified to, after defense counsel attempted to impeach his credibility as to the timing, nature, and number of [Petitioner]'s actions.

*Prejudice*

Furthermore, [Petitioner] suffered no prejudice. The motion court found, and we agree, that the State's questions directed to E.J. were largely supplemental clarifying elicitations of the facts and information E.J. had already revealed through his testimony. Objections, like the one made by trial counsel during the State's redirect and overruled by the trial court, if sustained would only result in the information being elicited in another manner. Objections would also serve to highlight E.J.'s testimony of [Petitioner]'s sexual abuse of E.J., already described in detail on a number of occasions, which trial counsel may want to avoid doing as a matter of sound trial strategy.

[Petitioner] failed to rebut the presumption trial counsel's failure to object was a strategic choice. In arguing ineffectiveness, a movant must overcome a strong presumption that counsel's failure to object was sound trial

9

strategy. In many instances, seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good.

Finally, [Petitioner] confessed to Detective Herr on tape to committing oral sex on E.J. seven or eight times prior to E.J. moving in with him on May 14, 2010, *i.e*., prior to E.J. turning seventeen. This tape was played for the jury. [Petitioner]'s claim of ineffective assistance of counsel for counsel's failure to object to allegedly leading questions sets forth no facts entitling him to an evidentiary hearing. Point II is denied.

(Resp't Ex. J. at 8-11) (citations omitted.

As discussed above, to prevail on his ineffective assistance claim, Petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. In addition, because the state court addressed this claim on its merits, Petitioner can prevail only by showing that the state court applied *Strickland* to the facts of this case in an objectively unreasonable manner. *See Bell*, 535 U.S. at 698-99.

A review of the record shows that the Missouri Court of Appeals did not apply *Strickland* to the facts of this case in an objectively unreasonable manner. The Court of Appeals noted that a trial court has great latitude regarding whether to allow leading questions, and would have been more likely than usual to allow such questioning where, as here, the witness was a young person testifying to highly personal and potentially embarrassing matters. Failing to object, when such an objection would almost certainly not have been sustained, is not ineffective. Furthermore, the Court of Appeals reasonably found that trial counsel's decision not to object seemed a matter of sound trial strategy, as to object could have served to emphasize E.J.'s testimony regarding

Petitioner's abuse. This Court agrees with the state court's determination that trial counsel's decision not to object was well within the "wide range of reasonable professional assistance" countenanced by *Strickland*. *Strickland*, 466 U.S. at 688. Because the Missouri Court reasonably applied *Strickland* in evaluating this claim, its determination was not "contrary to, [nor did it involve] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d). The Court will deny relief on Ground Two.

### iii. Trial Counsel's Failure to Cross-Examine Detective Herr

Petitioner's third ground for relief alleges that Petitioner's trial counsel was ineffective for failing to cross-examine Detective Herr with his police report. Specifically, Petitioner alleges that his attorney did not adequately cross-examine the Detective about the fact that his police report indicated that E.J. stated that the "big stuff" (referring to sexual activity) happened after he moved into Petitioner's house, which differed from E.J.'s testimony about when the sex acts occurred, and that if his attorney had cross-examined him more effectively, the outcome of the trial would have been different. Petitioner raised this claim on appeal from the denial of post-conviction relief, and the Missouri Court of Appeals considered this claim and rejected it on the merits, stating:

> [Petitioner] claims trial counsel was ineffective for failing to cross-examine Detective Herr with his police report from the CAC interview wherein E.J. stated the oral sex began after he moved into [Petitioner]'s house. [Petitioner] maintains this claim merited an evidentiary hearing because E.J.'s trial testimony about when the oral sex began differed from what he said in his CAC interview, as documented in Detective Herr's police report. [Petitioner] contends the timing of when the oral sex began was a disputed point because the State's position was the sodomies occurred before E.J. turned seventeen years old and before he moved in with [Petitioner], but [Petitioner]'s position was E.J. had moved in and turned seventeen when the sexual activity occurred. [Petitioner] claims had trial counsel cross-examined Detective Herr on this subject and in this fashion, there is a reasonable probability the outcome of the trial would have been different.
>
> The motion court found no ineffectiveness on the part of trial counsel in her cross-examination of Detective Herr. Rather, the motion court determined trial counsel effectively and aggressively cross-examined Detective Herr, at times

11

to the point of drawing objections from the prosecutor. The motion court found [Petitioner]'s complaints about trial counsel's failure to question Detective Herr as to E.J.'s statements to the CAC interviewer in the manner proposed by [Petitioner] were meritless because the jury heard the CAC interview, which spoke for itself, during trial counsel's cross-examination of E.J. Questioning Detective Herr about the notes he took of what was said by E.J. in the interview would only produce cumulative and irrelevant testimony in the face of the jury hearing the interview itself. As such, this suggested manner of questioning would not have produced the likelihood of a different outcome at [Petitioner]'s trial, and did not merit an evidentiary hearing.

[Petitioner] maintains the motion court cannot speculate as to what trial counsel's trial strategy was, and had to hold an evidentiary hearing so that trial counsel could testify as to her trial strategy. [Petitioner] cites to *State v. Blue,* 811 S.W.2d 405, 410 (Mo. App. E.D. 1991), for this proposition. However, in *Blue*, counsel failed to call a witness altogether. We remanded for an evidentiary hearing for counsel to explain her trial strategy in not doing so. We cited to *State v. Talbert*, 800 S.W.2d 748, 749 (Mo. App. E.D. 1990), where our Court determined that in the absence of an evidentiary hearing, there is no basis for determining the trial counsel's reason for failure to call a witness. *Blue*, 811 S.W.2d at 410. We found in *Talbert* the movant alleged what his witness would have testified and, if true, the testimony would have been important to the defense.

Here, trial counsel did not fail to call a witness who would have testified to something important to [Petitioner]'s defense. Also, trial counsel thoroughly cross-examined Detective Herr, portions of the interview were read into evidence, and E.J. himself testified and was cross-examined by trial counsel as to the relevant acts and dates thereof alleged by E.J. Questioning Detective Herr about the notes he took of E.J.'s interview would only produce irrelevant testimony in the face of the jury hearing the interview itself. As such, this suggested manner of questioning would not have produced the likelihood of a different outcome at [Petitioner]'s trial, and did not merit an evidentiary hearing. Point I is denied.

(Resp't Ex. J, at 6-8) (citations omitted).

A review of the record shows that the Missouri Court of Appeals did not apply *Strickland* to the facts of this case in an objectively unreasonable manner with regard to this claim. After reviewing the trial transcript, the Court agrees with the state court's characterization of trial counsel's cross-examination of Detective Herr as both extensive and aggressive. Resp't Ex. B, at 408-58. The Court also finds reasonable the Court of Appeal's determination that it was not ineffective for counsel to refrain from questioning the Detective about the notes he took during

E.J.'s interview with the CAC. Portions of the CAC interview were read into evidence during trial, and it is not clear how it could have bolstered Petitioner's defense to hear redundant testimony from Detective Herr regarding his notes of that same interview. Perhaps most saliently, and as noted by the Missouri Court of Appeals, E.J. testified at trial, and was extensively cross-examined by trial counsel regarding the alleged inconsistencies in his statements regarding the dates of various sexual acts. In light of that, and given the strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance, counsel's failure to cross-examine the Detective about his notes did not negatively impact counsel's performance, as doing so would have added nothing of value to Petitioner's defense. In light of the above, the undersigned cannot conclude that the Missouri Court of Appeals' determination was "contrary to, or an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d). The Court will deny relief on Ground Three.

### B. Procedurally Defaulted Claims: Grounds Four, Five, and Six

Petitioner's remaining grounds for relief are as follows: Ground Four, that Petitioner's convictions violated the double jeopardy clause; Ground Five, that the trial court erred by failing to declare a mistrial during the state's closing argument based on improper personalization; and Ground Six, that the trial court erred by failing to declare a mistrial during the state's closing argument after the prosecutor characterized Petitioner in a manner that was without an evidentiary basis. Grounds Four, Five, and Six were presented in Petitioner's direct appeal, but because they were not properly preserved, the Missouri Court of Appeals did not review them on their merits. Resp't Ex. E. More specifically, as to the claim asserted in Ground Four, the Missouri Court of Appeals found that because Petitioner conceded that the claim was not preserved for review, and because he "failed to establish error, plain or otherwise" regarding a double jeopardy violation, the

13

state court declined to conduct even plain error review. *Id*. at 7. As for the claims asserted in Grounds Five and Six, the Missouri Court of Appeals did conduct plain-error review of both, and determined that the trial court had not erred. However, as recently held by the Eighth Circuit, plain-error review by a state court will not revive a procedurally defaulted claim for purposes of federal habeas review. *See Clark v. Bertsch*, 780 F.3d 873, 874 (8th Cir. 2015) ("[A] federal habeas court cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error.").

Respondent asserts that because Petitioner's Grounds Four, Five, and Six for habeas relief are procedurally defaulted, they are not adequate bases for habeas relief. The Court agrees that these Grounds are procedurally barred from federal court review, as Petitioner did not properly preserve them for review at the state level. Furthermore, Petitioner presents no argument to excuse the default, and the record contains no indication that he can show the requisite prejudice to overcome a procedural bar, or that he is actually innocent. *See Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007) (because Petitioner failed to establish cause to excuse his procedural default, the district court need not consider whether prejudice had been shown); *see also Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006) (where Petitioner failed to present new evidence of actual innocence, the refusal to entertain his procedurally defaulted claims will not result in a fundamental miscarriage of justice). Accordingly, Petitioner's claims asserted in Grounds Four, Five, and Six are procedurally barred from federal habeas review, and will be denied.

### IV. CONCLUSION

For all the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28

14

U.S.C § 2253(c)(1)A). To grant such a certificate, the judge must find that the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). This court finds that reasonable jurists could not differ on Petitioner's claims, so that the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FINALLY ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of September, 2019.